IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>JEREMIAH VAUGHN GREGORY, JR.,<br><br>Defendant. | AMENDED ORDER REGARDING<br>SENTENCING ENHANCEMENT<br><br><br><br><br>Case No. 2:05-CR-893 |

Defendant Jeremiah Vaughn Gregory, Jr., is a self-proclaimed member of a radical, white-supremacist organization called "The Order," which he characterizes as a fundamentalist element of the Aryan Nation.  Appearing at  trial pro se, he challenged his bank robbery charge with what essentially amounted to a justification defense, i.e., that robbing banks was and continues to be necessary, and therefore justified, to fund his racial holy war — which he terms "Rohowa"[1] — against a "corrupt and illegal government"[2] that has abandoned its constitutional mandate and promoted a "multi-racial cesspool"[3] of inhabitants.  Over the past twenty-four years, Mr. Gregory has participated in numerous armed attacks on financial institutions, all the while

---

[1] Def.'s Mem. Supp. Supplemental Jury Instructions 5 (Docket No. 38).

[2] Def.'s Sentencing Mem. 3 (Docket No. 70).

[3] Def.'s Mot. Reconsider 7 (Docket No. 44).

using the proceeds to fund his own criminal purposes as well as "tith[ing] a portion of each operation [to "The Order"] to help finance the continuing war"[4] against the United States and "donat[ing] some money to other right-wing groups."[5]  If not imprisoned, moreover, he fully intends to engage in a "continuing war against the corrupt and unconstitutional government of the United States"[6] by "whatever means possible"[7] until "[his] last breath if need be."[8]

For these reasons, as well as others discussed below, the court thus finds that a prison sentence normally contemplated by the guidelines for bank robbery does not adequately account for the seriousness of Mr. Gregory's crimes, nor for the continuous, determined nature of his violations of the law.  As a result, an upward departure from the sentencing guidelines pursuant to USSG § 5K2.9 is appropriate in this case.  Alternatively, an upward "variance"[9] under 18 U.S.C. § 3553(a) is also appropriate.

## FACTUAL BACKGROUND

On May 6, 2005, officers responded to a bank robbery at Wells Fargo Bank located at 1955 West North Temple, Salt Lake City, Utah.  Upon the officers' arrival, bank employees told them that the robber had threatened the use of an explosive device, and that he had left the device behind in a black bag in the bank lobby upon exiting.  Bank employees also gave officers

---

[4] Def's Mem. Supp. Supplemental Jury Instructions 5 (Docket No. 38).

[5] *Id.*

[6] *Id.* at 2.

[7] Def.'s Sentencing Mem. 3 (Docket No. 70).

[8] *Id.* at 8.

[9] *United States v. Wilson*, 355 F. Supp. 2d 1269, 1272 (D. Utah 2005).

detailed descriptions of the robber and of his get-away vehicle.

While officers investigated the scene of the robbery, an anonymous caller who had seen surveillance photographs on the news identified the robber as Mr. Jay Gregory. The anonymous caller also supplied the police with a description of Mr. Gregory's vehicle, which matched the description of the get-away vehicle provided by the bank employees. Contact with Mr. Gregory's mother then produced a partial license plate number, which was later confirmed to be registered to a car matching the descriptions by the bank employees and the anonymous caller.

Four days later, on May 10, 2005, the Mountain West Bank located in Missoula, Montana was robbed as well. Mr. Jay Gregory was subsequently identified as the robber. The events and circumstances of this robbery were similar to those of the Wells Fargo robbery that had taken place on May 6, 2005 in Salt Lake City (i.e., similar description of the robber and of the use of a bag left behind that allegedly contained an explosive device). Investigation by Missoula authorities traced the robber to a Holiday Express in Missoula. A "Mr. Jay Gregory" was registered in room 319, and employees of the hotel identified Mr. Gregory from surveillance photographs as the occupant in room 319. Records also indicate that Mr. Gregory stayed at the Holiday Express from May 6, 2005 through May 10, 2005.

Further investigation led authorities to the Coeur d'Alene/Spokane area, where Mr. Gregory's vehicle was located at the La Quinta Inn. A "Mr. Jeremiah Gregory" was registered as a guest. On May 12, 2005, local FBI agents and other local law enforcement officers arrived at the La Quinta Inn at approximately 2:00 a.m. and arrested Mr. Gregory. Following the arrest, Mr. Gregory consented to a search of his hotel room; the search produced evidence linking Mr. Gregory to both bank robberies. Mr. Gregory subsequently admitted and confessed to both

robberies as well.

On December 7, 2005, a grand jury returned an indictment charging Mr. Gregory with bank robbery in violation of 18 U.S.C. § 2113(a). Mr. Gregory's case was administratively closed on February 13, 2007 and then reopened on February 21, 2007. A warrant for his arrest had been issued on December 8, 2005, but was not executed until February 21, 2007.

Prior to the current proceedings, Mr. Gregory was indicted for the May 10, 2005 robbery in the United States District Court for the District of Montana. On June 1, 2005, a Montana grand jury handed down an indictment charging Mr. Gregory with bank robbery. Mr. Gregory eventually entered a voluntary guilty plea to the charge on November 30, 2005, and a presentence investigation report was filed with the Montana court on March 9, 2006, finding a sentencing guidelines level of 23; the corresponding guideline provision suggested a sentence between 92 to 115 months. On April 13, 2006, a final judgement and a sentencing report were entered, sentencing Mr. Gregory to 240 months. This sentence reflected an upward departure based on the factors in 18 U.S.C. § 3553(a). The sentencing judge explained the departure as follows:

> In the sentencing colloquy the Defendant articulately expressed his pride in his considerable criminal history and his desire to continue to participate in and support his strident anti-government view, including future criminal behavior on his part. His only expressed regret was his failure to follow through with a plan to hijack a bus which he intended to explode outside of a federal building in Idaho. He also noted the recent anniversary of the Oklahoma City bombing, an event he thought should be celebrated as a key moment in the war against the United States government. Thus, specific deterrence is a principal concern because as the Defendant acknowledged he has no intention to change his views and behavior. The public needs to be protected from people like the Defendant. The high risk of recidivism, the need to protect the public, and Defendant's expressed intent to continue criminal behavior are the motivating reasons for the sentence. There may be disparity with other defendants sentenced under the sentencing guidelines, but the guidelines are only one factor and given the Defendant's criminal history, proclivities, beliefs, lack of respect for the

law, and other factors under § 3553(a), the imposed sentence is warranted.[10]
Upon Mr. Gregory's  conviction and sentencing for the Montana bank robbery, the warrant
previously issued in December 2005 was then executed so that Mr. Gregory could be brought to
Utah to account for his actions within the jurisdiction of the District of Utah.

On April 6, 2007, Mr. Gregory filed a Motion to Dismiss Indictment for Lack of
Jurisdiction.[11]  In this motion, Mr. Gregory argued that in light of his membership in "The Order"
and of his "battle plan"[12] to destabilize the United States government by attacking "zionist banks
and financial institutions,"[13] he is "clearly a combatant in the struggle for a racially pure white
homeland."[14]  As a result, he contended, his crimes constitute offenses against the law of war
and, as such, prevent him from being held accountable to "civilian authorities."[15]  On April 12,
2007, however, this court denied his motion, finding that his arguments were facially meritless
and that he had proffered no good cause for the court to dismiss the charges against him.[16]

After voir dire and the jury impanelment, trial began on June 13, 2007.  Mr. Gregory
chose to represent himself pro se, although stand-by counsel remained at his side during the trial.
Upon hearing all of the arguments and the evidence presented by the parties, the jury deliberated

---

[10] Presentence Investigation Report 52 (Docket No. CR 05-25-M-DWM).

[11] Def.'s Mot. Dismiss Indictment Lack Jurisdiction (Docket No. 17).

[12] *Id.* at 2.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] Order Den. Mot. Dismiss 1-2 (Docket No. 19).

for approximately twelve minutes before returning a guilty verdict.  A sentencing hearing was then scheduled for August 23, 2007.

On June 28, 2007, this court provided notice of its intent to depart upward from the sentencing guidelines.[17]  As potential sources of authority for this variance the court cited § 5K2.9 of the United States Sentencing Guidelines (USSG) — which provides that a court may impose an enhanced sentence above the guideline range to reflect the actual seriousness of the defendant's conduct if it finds that the defendant committed the offense to facilitate or conceal the commission of another offense[18] — as well as *United States v. Booker*[19] and 18 U.S.C. § 3553(a).

Based on Mr. Gregory's claims and on his statements in his pleadings, it is clear that he committed the offense of bank robbery to facilitate the commission of another offense.  Mr. Gregory's pleadings assert that he realized "the 'struggle' required money [so] he engaged in numerous armed robberies of civilian financial institutions" [to] "fund the birth of a separate white homeland in the Pacific Northwestern region of the United States."[20]  In addition, he openly admitted to participating in such attacks for the purpose of furthering other criminal activity, stating that he "participated in numerous 'acts of war' that netted substantial amounts of cash for the continuing war [against the United States]."[21]

---

[17] Order Providing Notice Contemplated Sentencing Variance (Docket No. 66).

[18] USSG § 5K2.9.

[19] 543 U.S. 220 (2005).

[20] Def. Mot. Reconsider 6 (Docket No. 44).

[21] *Id.* at 2 (Docket No. 44).

Mr. Gregory also has made it perfectly clear that he, at all times, sought — and, were he not imprisoned, would continue to seek — to engage in whatever criminal activity necessary to gain funds to pursue his "declared conflict against the United States."[22]  Specifically, he asserted that he targeted financial institutions and private corporations across the United States "in order to fund this operation and destabilize the government of the United States."[23]  And he also later proclaimed that Rohowa is an ongoing conflict, and that his May 2005 actions were in furtherance of that conflict.[24]

Mr. Gregory's battle plan consists, among other goals, of "relocat[ing] undesirables,"[25] of destabilizing the United States government, of creating a "racially-pure white homeland,"[26] and of supporting radical-fundamentalist, white-supremacist groups.  As a self-described "unlawful combatant" whose purpose is to support and carry out violent attacks against the property and lawfully constituted purpose of the United States' government,[27] Mr. Gregory has engaged in numerous armed attacks upon financial institutions in this country.  And he has expressed unequivocally that he will continue to do so as often as necessary to garner enough funds to effectuate his plan.[28]

---

[22] Def.'s Sentencing Mem. 2 (Docket No. 70).

[23] Def's Mem. Supp. Supplemental Jury Instructions 5 (Docket No. 38).

[24]  Def.'s Mot. Reconsider 5 (Docket No. 44).

[25] Def.'s Mot. Dismiss 2 (Docket No. 17).

[26] *Id.*

[27] Def.'s Mot. Reconsider 5 (Docket No. 44).

[28] *Id.* at 6.

Ultimately, then, Mr. Gregory has committed serious, violent crimes in furtherance of other crimes, and he will not stop unless incarcerated. He has not only admitted as much himself, but also has conceded to the government's allegations of such a criminal purpose. This places Mr. Gregory squarely within the category of criminals contemplated by the Sentencing Commission when it wrote § 5K2.9. Therefore, this court finds an upward departure based on § 5K2.9 is warranted and now imposes a sentence of 240 months, which shall run consecutively with the sentence imposed by the Montana court. The same sentence is alternatively justified as an upward variance under 18 U.S.C. § 3553(a).

## DISCUSSION

## I.      Departure for Other Crimes

### (A)  Basis for Departure

The court finds that Mr. Gregory committed bank robbery, a violation of 18 U.S.C. § 2113(a), to facilitate the commission of another offense. Consequently, the court may upwardly depart from the sentencing guidelines pursuant to § 5K2.9. Section 5K2.9 provides:

> If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct.[29]

In this case, Mr. Gregory himself has admitted many times that he perpetrated several armed robberies of financial institutions to fund the violent overthrow of the United States. He also has expressly stated, and many times implied, that he committed the Wells Fargo Bank robbery on May 6, 2005 to earn money for his war against the United States and to support the unlawful, violent activities of "The Order" and other radical, right-wing groups. Were a sentence within

---

[29] USSG § 5K2.9.

normal guideline ranges imposed on Mr. Gregory, then, such a sentence would fail to reflect the seriousness of his conduct as it fits into his much more extensive, ongoing criminal plan.

In *United States v. Hawkins*, the Tenth Circuit articulated the proper test for when application of § 5K2.9 is appropriate, holding that there must be a sufficient connection, or nexus, "between the charged offense and additional criminal conduct to which § 5K2.9 applies."[30]  There, the district court had upwardly departed from the guidelines in sentencing the defendant for unarmed bank robbery on three grounds, one of which was criminal purpose pursuant to § 5K2.9.[31]  The reasoning behind the § 5K2.9 basis was that the defendant's robbery had facilitated his commission of the separate crime of acquiring cocaine.[32]

In reversing the upward departure on appeal, however, the Tenth Circuit stated that the district court "made no finding that the defendant committed the charged offense to provide the means for accomplishing another crime.  [Rather], the [district] court seemingly concluded the defendant's motive for committing the robbery was to satisfy his 'heavy crack cocaine habit.'"[33]  The Tenth Circuit thus held that the defendant's cocaine habit, without more, did not provide the requisite nexus to support an upward variance pursuant to 5K2.9.[34]

The instant case is distinguishable from *Hawkins* in two important ways, though.  First,

---

[30] 901 F.2d 863, 866 (10th Cir. 1990).  *See also United States v. Wallace*, 461 F.3d 15, 40 (1st Cir. 2006) ("The focus of a criminal facilitation departure from a guidelines range is on the specific criminal activity being facilitated or concealed and the nexus between that criminal activity and the offense charged.").

[31] *Hawkins*, 901 F.2d at 863-64.

[32] *Id.* at 864.

[33] *Id.* at 866.

[34] *Id.*

this court has made specific factual findings regarding the nexus between the charged criminal activity and Mr. Gregory's criminal purpose, determining that Mr. Gregory's acknowledged "battle plan" is to rob banks for the purpose of supplying money for both his personal, armed attacks and violations of the law and for the violent, illegal endeavors of "The Order." Second, Mr. Gregory has made his criminal purpose absolutely clear. He has stated many times throughout his pleadings, both expressly and implicitly, that he robbed Wells Fargo Bank on May 6, 2005 — in addition to robbing several other banks in the past — to fund his racial holy war, to attack other financial institutions and private corporations, to destabilize the United States government, and to provide funds to "The Order" and other lawbreaking, white-supremacist groups. Also, when the prosecution asserted that Mr. Gregory committed the May 6, 2005 offense in furtherance of other criminal activity, he readily conceded to the allegation.

Furthermore, the case law emphasizes that § 5K2.9 applies "only in situations where the guidelines for a particular offense do not adequately take into consideration the facilitation or concealment of another offense."[35] In *United States v. Hanson*, for example, the Tenth Circuit rejected a 5K2.9 variance on the basis that a sentencing court cannot upwardly depart from the second-degree murder guideline range on grounds that merely recharacterize the crime as first-degree murder.[36] In so doing, the court agreed with the position that "the question of premeditation had already been considered by the Guidelines in setting different offense levels for first-degree and second-degree murder."[37] And similarly, in *United States v. Ogbeide* the

---

[35] *United States v. Ogbeide,* 911 F.2d 793, 796 (D.C. Cir. 1990).

[36] 264 F.3d 793, 990 (10th Cir. 2001).

[37] *Id.* at 995-96.

D.C. Circuit held that where the crime charged was "possession of unauthorized credit cards *with the intent to defraud*," the actual use of such credit cards did not warrant departure under § 5K2.9 because "the sentence prescribed by the guidelines for that offense had necessarily taken into consideration the fact that the offense would facilitate the crime of fraud itself."[38]

On the other hand, upward departures under § 5K2.9 are affirmed when the "other crime" facilitated is truly independent of the charged crime.  The Tenth Circuit illustrated this point in *United States v. Cook*, where the defendant stole money from the United Way to cover up and reimburse money that she had unlawfully appropriated from her mother.[39]  The court reasoned that an "embezzlement from one party to conceal a separate embezzlement from another would be a sufficient predicate for departure [under § 5K2.9]."[40]

Other cases from around the country reinforce this principle.  In *United States v. Lazarevich*, for example, an upward departure for false statements made on a passport application was upheld because it was committed to facilitate the non-extradited offense of child abduction.[41]  In addition, in *United States v. Cofer* the Sixth Circuit upheld a departure where the defendant had sexually abused several minors in commission of the offense of producing sexually explicit photographs, reasoning that "the Guidelines Manual does not adequately take into consideration any sexual abuse that may occur during the course of th[e] crime [of producing

---

[38] 911 F.2d at 796.

[39] No. 98-6215, 1999 U.S. App. LEXIS 9482, at *6 (10th Cir. May 18, 1999).

[40] *Id.* (citation omitted).

[41] 147 F.3d 1061, 1062-65, (9th Cir. 1998).

sexually explicit photographs of minors]."[42]  And in *United States v. Orchard*, the Eighth Circuit approved an upward departure where the defendant committed a drug offense to facilitate a sexual assault, noting that the guideline heartland for underage drug distribution did not take into account the facilitation of such further crimes.[43]

Finally, *United States v. Brady* is particularly on point in relation to the facts of the instant case.  There*,* the defendant repeatedly admitted that he had used the money from his commission of bank larceny to buy drugs.[44]  In affirming the upward departure under § 5K2.9, the Fourth Circuit stated, "given these admissions, we cannot say that the district court abused its discretion in determining that a departure was appropriate."[45]

In the present case, the guidelines for the offense of bank robbery undoubtedly fail to consider the facilitation of further armed attacks on financial institutions in service of an ongoing racial holy war to destabilize the United States' government.  These separate, additional robberies are not mere gradations of the charged crime.  Nor do they constitute an element of the same, charged crime.  Instead they are fully independent crimes in their own right — or, as Mr. Gregory freely admits, "numerous 'acts of war' that netted substantial amounts of cash for the continuing war [against the United States]."[46]

Therefore, in line with the *Hawkins* test, this court finds that Mr. Gregory's conduct, as

---

[42] No. 89-3920, 1990 U.S. App. LEXIS 18574, at *12, 15 (6th Cir. October 19, 1990).

[43] 332 F.3d 1133, 1140 (8th Cir. 2003).

[44] No. 90-5472, 1991 U.S. App. LEXIS 22938, at *1, 5 (4th Cir. October 1, 1991).

[45] *Id.* at *5.

[46] Def. Mot. Reconsider 2 (Docket No. 44).

evidenced by his statements, concessions and prior criminal activity, provides a sufficient "nexus" between the charged offense and the additional criminal acts to which § 5K2.9 applies.

### (b)  Degree of Departure

Once a valid basis for departure is established, the court must then determine and explain the degree of departure.[47]  Ultimately the extent of departure must be reasonable, such that the actual sentence imposed is based upon objective criteria.[48]  In many instances, "this will consist of an extension of or an extrapolation from other guideline levels or principles, use of an analogy to other closely related conduct or circumstances that are addressed by the guidelines."[49]

In the present case, Mr. Gregory's total offense level has been calculated at 26.[50]  Given that he falls within a criminal history category of VI, this places him at a baseline sentencing range of 120-150 months according to the sentencing table.  The court, however, finds that bank robbery to fund further crimes in an ongoing war to destabilize and overthrow the United States' government is an extremely serious crime.  And though a perfect analogy is difficult, it seems to the court that an upward adjustment of six levels is necessary to adequately account for the gravity and extent of these additional offenses — which are, obviously, contemplated by Mr. Gregory to be very serious crimes.  This extension brings Mr. Gregory to a total offense of 32, which places within a sentencing range of 210-262 months.  Accordingly, the court finds that a sentence of 240 months is appropriate here.

---

[47] *United States v. Gardner,* 905 F.2d 1432, 1435 (10th Cir. 1990).

[48] *United States v. Jackson*, 921 F.2d 985, 990 (10th Cir. 1990).

[49] *Id.* at 990-91.

[50] Presentence Report 5 (Docket No. 2:05-CR-00893-001-PGC).

## II.     Variance

The court also would impose the same sentence without any regard to § 5K2.9 as a variance from the guidelines in light of the factors listed in 18 U.S.C. § 3553(a).  The Supreme Court has interpreted § 3553(a) as directing the sentencing judge, in imposing a sentence, to consider the following factors:

> (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, © incapacitation, and (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.[51]

Here, an upward departure adequately reflects the unusual nature of the offense and offender characteristics, given that Mr. Gregory employed a fake bomb to rob a bank as part of pattern of criminal activity designed to fund the forced overthrow of the United States' government.  In addition, a departure meets basic sentencing aims by sentencing violent offenders with extensive criminal histories — like Mr. Gregory — more harshly than non-violent offenders, while at the same time effectively incapacitating and deterring him in light of his ongoing criminal proclivity and avowed refusal to reform his behavior.

Indeed, specific deterrence is the overriding factor here, as Mr. Gregory has staunchly proclaimed his intention to engage in a "continuing war against the corrupt and unconstitutional government of the United States"[52] by "whatever means possible"[53] until "[his] last breath if need

---

[51] *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007).

[52] Def's Mem. Supp. Supplemental Jury Instructions 2 (Docket No. 38).

[53] Def.'s Sentencing Mem. 3 (Docket No. 70).

be."[54]  The public needs protection from such dangerous people, and a sentence normally

contemplated by the guidelines does not adequately serve that purpose due to the great risk of

recidivism and Mr. Gregory's expressed intent to continue his criminal conduct.  Although the

upward departure might seem to create a risk of sentencing disparity with respect to other

defendants, few defendants are in Mr. Gregory's situation.  Also, on a similar charge in Montana,

the judge there imposed a 240-month sentence — the same as the court imposes here.

Accordingly, the court finds § 3553(a) provides an alternative basis for the increased

sentence deemed appropriate in this case.

## III.   Sentence to Run Consecutively with That Imposed by Federal District Court in Montana

The 240-month sentence imposed by the court shall run consecutively[55] with that imposed

by the United States District Court for the District of Montana.  Under 18 U.S.C. § 3584(a),

district courts have discretion in choosing between consecutive and concurrent terms of

imprisonment.[56]  That provision also creates a presumption that "[m]ultiple terms of

imprisonment imposed at different times run consecutively unless the court orders that the terms

are to run concurrently."[57]  In exercising its discretion, moreover, a district court "need only

consider 18 U.S.C. § 3553(a) en masse and state its reasons for imposing a given sentence;" it

---

[54] *Id.* at 8.

[55] The court's earlier, written order mistakenly states that Mr. Gregory's sentence shall run "concurrently" with that imposed by the Montana court.  Order Re Sentencing Enhancement 8, 13 (Docket No. 78).  But what was intended — and what was actually said at the sentencing — was that the sentence shall run "consecutive" to the Montana time.  Sentencing Hr'g Tr. 4, Aug. 23, 2007.  This order corrects that clerical mistake.

[56] 18 U.S.C. § 3584(a).

[57] *Id.*

"need not expressly weigh each of the § 3553(a) factors on the record."[58]

Here, then, for the very same reasons articulated in Section II of this opinion explaining why the § 3553(a) factors support an upward departure, the court finds they also support its determination that Mr. Gregory's 240-month sentence shall run consecutively with that previously imposed by the Montana district court. Such a result is fully in keeping with the presumption created by § 3584(a), and is necessary given the serious, ongoing nature of Mr. Gregory's criminal conduct in this case. Moreover, because the Montana bank robbery was a separate offense — not effectively considered by the sentencing guidelines here — additional punishment is warranted for the serious offense before the court.

## CONCLUSION

The facts of this case are analogous to those where courts have found upward sentencing departures warranted. Mr. Gregory has made repeated statements and admissions that he robbed banks to commit other crimes. The waging of war against the United States, and the illegal, violent activities it entails, is certainly not contemplated within the statute that makes bank robbery a crime. In other words, since it is possible to commit bank robbery without the intent to commit other crimes, it is reasonable to conclude that Mr. Gregory's intended funding of further racially motivated attacks was not taken into account by the Sentencing Commission.

The court, therefore, finds a strong nexus exists between Mr. Gregory's purpose in robbing Wells Fargo Bank on May 6, 2005 and his intent to commit other crimes with the proceeds from that robbery. For that reason, the court concludes that a departure under § 5K2.9 is both warranted and appropriate. The court also concludes that a variance pursuant to 18

---

[58] *United States v. Rose*, 185 F.3d 1108, 1113 (10th Cir. 1999) (internal quotations and citation omitted).

U.S.C. § 3553(a) alternatively justifies the same result.

IT IS SO ORDERED.

DATED this 28th day of August, 2007.

BY THE COURT:

Paul G. Cassell
United States District Judge